WRIGHT, FINLAY & ZAK, LLP
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Christopher A. J. Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
(702) 475-7964; Fax: (702) 946-1345
cswift@wrightlegal.net
*Attorneys for The Bank of New York Mellon, f/k/a Bank of New York, as Trustee AS Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OC2, Mortgage Pass-Through Certificates Series 2006-OC2 and Select Portofolio Servicing, Inc.*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ILIA CHAROV<br><br>Debtor.<br>_____<br><br>ILIA CHAROV AND RICK A. YARNALL as TRUSTEE BANK<br><br>Plaintiffs<br><br>v.<br><br>BANK OF NEW YORK MELLON, AS TRUSTEE BANK, et. al.<br><br>Defendant<br>_____ | Adversary Case No. 15-01107-mkn<br>Case No.: 15-13297-mkn<br>Chapter:  13<br><br>**MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR MORE DEFINITE STATEMENT**<br><br>Hearing Date:  January 14, 2016<br>Hearing Time: 10:00 am |

     The Bank of New York Mellon, f/k/a Bank of New York, as Trustee AS Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OC2, Mortgage Pass-Through Certificates Series 2006-OC2 ("BONY") (erroneously sued as "Bank of New York Mellon, f/k/a Bank of New York, as Trustee, on behalf of the registered holders of Alternative Loan Trust 2006-OC2, Mortgage Pass-Through Certificates Series 2006-OC2") and Select Portfolio Servicing, Inc. ("SPS"), by and through its counsel of record, Christopher A. J. Swift, Esq. of

Wright, Finlay & Zak, LLP, hereby moves this Court pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and (e) and 8(a), as made applicable pursuant to Bankruptcy Rule 7012(b), for an Order dismissing Plaintiff Ilia Charov's ("Charov") Complaint for Declaratory and Injunctive Relief.

This Motion is based upon the attached Memorandum of Points and Authorities, and upon all pleadings and documents filed in the above-Court, as well as any oral argument that may be presented at the time of the hearing or any matters of which judicial notice is requested or proper.

Dated: November 13, 2015                WRIGHT, FINLAY & ZAK, LLP

/s/ Christopher A. J. Swift
Christopher A. J. Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Ave., Ste. 200
Las Vegas, NV 89117
*Attorneys for The Bank of New York Mellon, f/k/a Bank of New York, as Trustee AS Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OC2, Mortgage Pass-Through Certificates Series 2006-OC2 and Select Portofolio Servicing, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTORY STATEMENT

. Debtor's Complaint appears to contend that BONY does not have a valid lien against the subject property. The documents, subject to judicial notice undermine this contention. To the extent that this Court would not consider dismissal pursuant to FRCP 12(b)(6), the Debtor's Complaint is so vague and ambiguous that SPS and BONY cannot, at this time, provide a meaningful response and thus this Court should direct the Debtor to provide a more definite statement.

### II.    STATEMENT OF FACTS

**A.    BONY's Interest in the Property**

On December 28, 2005, Charov borrowed $247,100.00 to purchase real property located at 1578 E. Cassia Ct., Gilbert, Arizona 85296 (the "Property"). As part of the same transaction, Charov executed a Note secured by a Deed of Trust that was recorded in the Official Records of

1   Maricopa County as document number 2005-1965137.[1]   The Deed of Trust identified

2   GreenPoint Mortgage Funding, Inc. as the lender, and Mortgage Electronic Registration

3   Systems, Inc. as the nominee for the lender and its successors and assigns.[2]   The Deed of Trust

4   was subsequently assigned through several recorded Assignments to BONY.[3]  SPS services the

5   loan.

6   **B.      The Debtor's Bankruptcy Filings.**

7          April 13, 2009, Ilia Charov filed a voluntary Chapter 13 petition in the District of

8   Nevada, which resulted in case 09-15503-lbr. The case was dismissed on October 15, 2009,

9   due to the debtor's failure to provide the trustee with copies of her bank statements,

10  verification of funds, and a rental agreement. On March 18, 2010, Ilia Charov filed her second

11  voluntary Chapter 13 petition in the District of Nevada, which resulted in case 10-14429-lbr.

12  The case was dismissed on August 3, 2010, due to the debtor's failure to pay her filing fee.

13         On October 15, 2013, Ilia Charov filed her third voluntary Chapter 13 petition in the

14  District of Nevada, which resulted in case 13-18750-mkn. The case was dismissed on January

15  15, 2014, due to the debtor's failure to file her Schedules and her Statement of Financial

16  Affairs.

17         On March 5, 2015, Ilia Charov filed her fourth voluntary Chapter 13 petition in the

18  District of Nevada, which resulted in case 15-11153-mkn. The case was dismissed on May 28,

19  2015, due to the debtor's failure to attend the meeting of creditors, commence plan payments,

20  and resolve the Trustee's Opposition to Confirmation.  On June 5, 2015, Ilia Charov filed her

21  fifth voluntary Chapter 13 petition in the District of Nevada, which resulted in the instant case.

22  Case 15-13297-mkn is the debtor's second case filed within the last year.

23                                           **III.**

24

25

26  _____

27  [1]      See Deed of Trust, a true and correct copy attached hereto as **Exhibit A**.
    [2]      *Id*.
28  [3]      See Assignment of Mortgage, a true and correct copy attached hereto as **Exhibit B**; see
    also Corporation Assignment of Deed of Trust Arizona, a true and correct copy attached hereto
    as **Exhibit C**.

## LEGAL STANDARD

### A.    FRCP 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a dismissal is proper where the complaint fails to state either a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." Balistieri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Mendiondo v. Centinela Hosp. Med.Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (complaint "must allege sufficient facts to raise a right to relief above the speculative level."); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (a complaint does not allege sufficient facts to raise a right to relief above the speculative level if it contains nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."). A motion to dismiss should be granted if the complaint presents claims that do not "raise a right to relief above the speculative level" or do not allege sufficient facts to state a claim that is plausible on its face. Twombly at 558-59; Aschcroft v. Iqbal, 129 S.Ct. 1937, 1950, 55, 74 (2009).

On a motion to dismiss, the Court need not accept as true unwarranted deductions of fact, legal characterizations, conclusory allegations or unreasonable inferences in a complaint. See State of Nev. v. Buford, 708 F.Supp. 289, 292 (1989); Western Mining Council v. Watt, 643F.2d 628, 624 (9th Cir. 1981). For example, an allegation that "defendant fraudulently induced plaintiff" is merely a conclusion which may be disregarded absent other specific supporting allegations. See, SEC v. Seaboard Corp., 677 F.2d 1315, 1316 (9th Cir. 1982). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. At 1949-50 (quoting Twombly, 550 U.S. at 555); see also, Clegg v. Cult Awareness Netword, 18 F.3d 752,754-55 (9th Cir. 1994).

Further, the Court may disregard allegations in a complaint if contradicted by facts established in documents exhibited, referenced, or which are central to the plaintiff's claims. Id; and see Wynn v. Clark Co. Bd. Of Com'rs., 74 Fed.Appx. 808, 809 (9th Cir. 2003) citing to, Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998); During v. First Boston Corp., 815 F.2d1265, 1267 (9th Cir. 1987); Branch v. Tunnel, 14 F3d 449, 454 (9th Cir. 1994) (court may

consider documents exhibited, referred to, or that are central to Plaintiffs' complaint); Cortec Industries, Inc. v. Sum Holdings, L.P., 949 F.2d 42, 47 (2nd Cir. 1991). This prevents plaintiffs from deliberately omitting references to documents upon which their claims are based. Parrino, id.; Cortec, id. Where an essential element of a claim for relief is absent, judgment is proper. Cf. Bulbman, Inc. v. Nevada Bell, 108, Nev. 105, 111, 825 P.2d 588, 592 (1992).

**B.    FRCP 12(e)**

Pursuant to FRCP 12(e), a party may move for a more definite statement where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."

**C.    FRCP 8(a)**

Pursuant to FRCP 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A claimant needs to provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160 (1993).

## IV. ARGUMENT

**A.    BONY HAS A VALID LIEN AGAINST THE PROPERTY**

While Charov's Complaint is difficult to discern, it appears he alleges, at least in part, that BONY does not have a valid lien against the Property. However, this contention is belied by the recorded Deed of Trust and Assignments, indicating that BONY is the current beneficiary of the Deed of Trust. To the extent that Charov is asking BONY to present the original Note prior to any sort of non-judicial foreclosure, there is no such requirement under Arizona law. Hogan v. Washington Mut. Bank, N.A., 230 Ariz. 584, 586-587, 277 P.3d 781 (Ariz. 2012); see generally Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011).

**B.    THE COMPLAINT FAILS TO PROVIDE NOTICE TO BONY OF PLAINTIFF'S CLAIMS**

Plaintiff's Complaint fails to adequately provide notice to BONY and SPS of what his allegations are, besides generally alleging that "Defendant is negligent per se." To the extent that the Court would not grant relief pursuant to FRCP 12(b)(6), BONY and SPS respectfully request that the Court grant relief pursuant to FRCP 8(a) or FRCP 12(e), as Plaintiff's Complaint is so vague and ambiguous that BONY and SPS cannot prepare a meaningful response.

## V. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice of documents that are not subject to reasonable dispute and are in the public record. Branch v. Tunnell, 14F.3d 449, 454 (9th Cir. 1994); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

## VI. CONCLUSION

For the foregoing reasons, BONY and SPS respectfully request that this Court dismiss the Debtor's Complaint.

Dated: November 13, 2015               WRIGHT, FINLAY & ZAK, LLP


/s/ Christopher A. J. Swift
Christopher A. J. Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Ave., Ste. 200
Las Vegas, NV 89117
*Attorneys for The Bank of New York Mellon, f/k/a Bank of New York, as Trustee AS Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-OC2, Mortgage Pass-Through Certificates Series 2006-OC2 and Select Portofolio Servicing, Inc.*

## Exhibit A

## Exhibit A

## Exhibit A

## First American Title

After recording please return to:

**GreenPoint Mortgage Funding, Inc.**
*[Company Name]*

*[Name of Natural Person]*

**981 Airway Court, Suite E**
*[Street Address]*

**Santa Rosa, CA, 95403-2049**
*[City, State  Zip Code]*



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2005-1965137 12/29/05 16:36
40 OF 58
ELECKFUNDERS

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

MIN: _____

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    **"Security Instrument"** means this document, which is dated **December 28, 2005**, together with all Riders to this document.

**(B)**    **"Borrower"** is **Ilia  Charov, A Single Man**
. Borrower is the trustor under this Security Instrument.  Borrower's mailing address is **195 Ida ave. 3, Las Vegas, NV 89109 USA.**

**(C)**    **"Lender"** is **GreenPoint Mortgage Funding, Inc.**.  Lender is a **Corporation** organized and existing under the laws of the State of New York.  Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**.

**(D)**    **"Trustee"** is **Marin Conveyancing Corp.**.  Trustee's mailing address is  **981 Airway Court, Santa Rosa, CA 95403.**

**(E)**    **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

**(F)**    **"Note"** means the promissory note signed by Borrower and dated **December 28, 2005**.  The Note states that Borrower owes Lender  **Two Hundred Forty Seven Thousand One Hundred  and 00/100ths** Dollars (U.S. **$247,100.00**) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 1, 2036.**

**(G)**    **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)**    **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                                    MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—                                           **Page 1 of 13**                                                            14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com                                                                                                                                     ...rce, Inc.

20051965137

(I)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☒ Planned Unit Development Rider    ☒ Other(s) [specify] Occupancy Rider
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

(J)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "**Escrow Items**" means those items that are described in Section 3.

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

20051965137

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Maricopa:

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

As more particularly described in exhibit "A"attached hereto and made a part hereof.

which currently has the address of 1578 E Cassia CT

[Street]

Gilbert,    Arizona 85296    ("Property Address"):

[City]    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—    Page 3 of 13    14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com    ©2001, The Compliance Source, Inc.

20051965137

any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in

20051965137

writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—                              Page 5 of 13                                          14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com                                                                                     © 2002, The Compliance Source, Inc.

20051965137

coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—    Page 6 of 13    14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com    ©2002, The Compliance Source, Inc.

20051965137

may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

---

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—                                     Page 7 of 13                                    14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com                                                                                   ©2001, The Compliance Source, Inc.

20051965137

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of

20051965137

any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

20051965137

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure

---

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—                                      **Page 10 of 13**                                    14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com                                                                                                     ©2002, The Compliance Source, Inc.

20051965137

given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—    Page 11 of 13    14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com    © 2000, The Compliance Source, Inc.

20051965137

Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____    (Seal)
                                                                           -Borrower
                                         **Ilia Charov**

_____        _____    (Seal)
                                                                           -Borrower

                                         _____    (Seal)
                                                                           -Borrower

                                         _____    (Seal)
                                                                           -Borrower

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—                        Page 12 of 13                    14301AZ 08/00 (Rev. 06/02)
www.compliancesource.com                                                             © 2002, The Compliance Source, Inc.

20051965137

State of Arizona                    §
                                    §
County of  MARICOPA                 §
                                    §

Before me the undersigned authority, on this day personally appeared **Ilia Charov**, known to me (or proved to me through an identity card or other document) to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal on this  28  day of  Nov  2005

(Seal)

> Notary Public State of Arizona
> Maricopa County
> K. Lindsey Holcomb
> Expires March 17, 2007

Notary Public
My Commission Expires:

Arizona Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3003 01/01 (rev. 06/02)
—THE COMPLIANCE SOURCE, INC.—                        Page 13 of 13                                14301AZ 08/00 (Rev. 06/02)
www.compliancesource.c                                                                          Source, Inc.

20051965137

**EXHIBIT "A"**

LOT 19, OF VISTA DEL ORO SOUTH AMENDED, ACCORDING TO THE PLAT OF
RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY,
ARIZONA, RECORDED IN BOOK 668 OF MAPS, PAGE 28.

20051965137

Loan Number:

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **28th** day of **December, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **GreenPoint Mortgage Funding, Inc.** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**1578 E Cassia CT, Gilbert, AZ 85296**

*[Property Address]*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Declaration of Covenants, Conditions, and Restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

**The MEadows at Shamrock Estates**

*[Name of Planned Unit Development]*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire,



Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 1 of 3                                  14501MU  08/00
www.compliancesource.com                                                                   ©2000, The Compliance Source, Inc.

20051965137

hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

 (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

 What Lender requires as a condition of this waiver can change during the term of the loan.

 Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

 In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

 **C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

 **D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

 **E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

 (i) the abandonment or termination of the PUD, except for abandonment or termination required by

 law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

 **F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



20051965137

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Ilia Charov                                    -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                               -Borrower                                                          -Borrower

*[Sign Original Only]*

Multistate PUD Rider— Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 3 of 3                                    14501MU 08/00
www.compliancesource.com                                                                          ©2000, The Compliance Source, Inc.

20051965137

**Loan Number:** ▮▮▮▮▮▮▮

# OCCUPANCY RIDER TO MORTGAGE/ DEED OF TRUST/SECURITY DEED

THE OCCUPANCY RIDER is made this 28th day of December, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to GreenPoint Mortgage Funding, Inc. (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1578 E Cassia CT, Gilbert, AZ 85296**
("Property Address")

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.  That the above-described property will be personally occupied by the Borrower as their principal residence within 60 days after the execution of the Security Instrument and Borrower shall continue to occupy the property as their principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld.
2.  That if residency is not established as promised above as well as in the Security Instrument, the Lender may, without further notice, take any or all of the following actions:
    a.  increase the interest rate on the Note by one-half of one percent (0.500%) per annum on a fixed-rate loan or increase the Margin on an Adjustable Rate Note by one-half of one percent (0.500%) per annum and to adjust the principal and interest payments to the amount required to pay the loan in full within the remaining term; and/or
    b.  charge a non-owner occupancy rate adjustment fee of two percent (2.00%) of the original principal balance and/or
    c.  require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made. The reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument, and/or

---

Occupancy Rider to Mortgage/Deed of Trust/Security Deed
GreenPoint Mortgage Funding                                     Page 1 of 2                                     H74670MU 09/05
December 27, 2005

20051965137

d.  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above-described property; and/or

e.  refer what is believed to be fraudulent acts to the proper authorities for prosecution. It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 AND 1014.

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by applicable law, shall not be a waiver of such right or remedy.

Should any clause, section or part of this Occupancy Rider be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Occupancy Rider which can be effected without such illegal clause, section or part shall nevertheless continue in full force and effect.

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including but not limited to, reasonable attorney's fees.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| Ilia Charov            -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

Occupancy Rider to Mortgage/Deed of Trust/Security Deed
GreenPoint Mortgage Funding                                    Page 2 of 2                                    H74670MU 09/05
December 27, 2005

20051965137

Loan Number:

# ADJUSTABLE RATE RIDER
### Six-Month LIBOR Index - Rate Caps

THIS ADJUSTABLE RATE RIDER is made this 28th day of December, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **GreenPoint Mortgage Funding, Inc.** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**1578 E Cassia CT, Gilbert, AZ 85296**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **7.375%**. The Note provides for changes in the interest rate and the monthly payments, as follows:
4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of **January, 01, 2009**, and on that day every six months thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Adjustable Rate Rider
GreenPoint Mortgage Funding                     Page 1 of 3                          H0282MU 05/05

20051965137

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and 750/1000ths** percentage points **(2.750%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125% ). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Interest Only Period (which is the period when my payments are of interest only) the Note Holder will determine the amount of the monthly payment as the amount of interest due at the new interest rate on the unpaid principal. The result of this calculation will be the new amount of my monthly payment.

After the Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date with interest at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.375%** or less than **2.750%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and 00/1000ths** percentage points **(1.000% )** from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **13.375%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

20051965137

If all or any of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider .

_____ (Seal)          _____ (Seal)
Ilia Charov                         -Borrower                                             -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                             -Borrower

*[Sign Original Only]*

Adjustable Rate Rider
GreenPoint Mortgage Funding                     Page 3 of 3                          H0282MU 05/05

<u>Exhibit B</u>

<u>Exhibit B</u>

<u>Exhibit B</u>



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2010-0462909 06/01/10 10:51 AM
7 OF 14

FCNTESR

RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

### Assignment of Mortgage

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. G4318 Miller Road, Flint, MI 48507 (Assignor) by these presents does assign and set over, without recourse, to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OC2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC2 1757 Tapo Canyon Road, Simi Valley, CA 93063 (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by ILIA CHAROV, A SINGLE MAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.. Said mortgage Dated: 12/28/2005 is recorded in the State of AZ, County of Maricopa on 12/29/2005, Instrument # 2005-1965137 AMOUNT: $ 247,100.00  Property Address: 1578 E CASSIA CT, GILBERT, AZ 85296
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: 5-18-2010
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.

By:

Nichole Clavadetscher
Certifying Officer

State of CALIFORNIA, County of VENTURA
On 5-18-2010, before me, the undersigned, Nichole Clavadetscher, who acknowledged that he/she is CERTIFYING OFFICER of for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC..

JON SECRIST
Commission # 1683790
Notary Public - California
Ventura County
My Comm. Expires Jul 24, 2010

Notary public, JON SECRIST
My commission expires: 7-24-2010

MERS Phone 888-679-6377
4100-N-5984 MIN
NBS/ASMT/BAC

AZ  Maricopa

## Exhibit C

## Exhibit C

## Exhibit C

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100789774  09/13/2010  03:22
ELECTRONIC RECORDING

3948221A-1-3-1--
Yorkm

First American Title

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA  93065

TS No. 08-0115083
TITLE ORDER#: 3948221

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND
TRANSFERS TO:
**THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWALT,
INC. ALTERNATIVE LOAN TRUST 2006-OC2 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-OC2**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/28/2005,
EXECUTED BY: ILIA CHAROV, A SINGLE MAN,TRUSTOR: TO MARIN CONVEYANCING
CORP., TRUSTEE AND RECORDED AS INSTRUMENT NO. 2005-1965137 ON 12/29/2005, IN
BOOK N/A, PAGE N/A, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF
MARICOPA COUNTY, IN THE STATE OF ARIZONA.

**LOT 19, OF VISTA DEL ORO SOUTH AMENDED, ACCORDING TO THE PLAT OF
RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY,
ARIZONA, RECORDED IN BOOK 668 OF MAPS, PAGE 28.**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: 9|10|2010         MORTGAGE ELECTRONIC REGISTRATION
                         SYSTEMS, INC.

State of: ___Texas___ )  BY: _Naomi Dudek_____
County of: ___Tarrant___ )  _____ Naomi Dudek ___, Assistant Secretary
On _9|10|2010_ before me _Tanesa Sharron Frazier_____; personally
appeared ____Naomi Dudek   Assistant Secretary_____, know to me (or proved to me on the
oath of _____ or through __TXDL___) to be the person whose name is subscribed
to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes
and consideration therein expressed.
Witness my hand and official seal.

_Tanesa Sharron_____
Notary Public's Signature

TANESA SHARRON FRAZIER
Notary Public, State of Texas
My Commission Expires
September 23, 2011

1|13|11

*Form azasgn (01/02)*